## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **GEOTAB INC. AND GEOTAB USA, INC.** )<br>)<br>*Plaintiffs*, )<br>)<br>v. )<br>)<br>)<br>**UNITED STATES** )<br>)<br>*Defendant*. )<br>) | Case No. 23-00185 |

### COMPLAINT

Plaintiffs Geotab Inc. and Geotab USA, Inc. (hereinafter "Geotab" or "Plaintiffs"), through their undersigned attorneys, allege as follows:

### PARTIES

1. Geotab USA, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Georgia. Geotab Inc. is a foreign corporation, organized under the laws of the Canadian province of Ontario. Geotab USA, Inc. is a related entity of Geotab Inc. that serves the U.S. market. Both Geotab USA, Inc. and Geotab Inc. were importers of record of the merchandise which is the subject of this action, and paid the liquidated duties, taxes and fees. Both Geotab USA, Inc. and Geotab Inc. are real parties in interest in this action and references to "Geotab" refer to Geotab USA, Inc. and Geotab Inc., collectively. Geotab is a global leader in connected transportation solutions. Geotab sells its flagship product, the GO Device, and its cloud-based software, MyGeotab™, in the United States.

2. Defendant United States, through U.S. Customs and Border Protection ("CBP"), is responsible for classifying merchandise imported into the United States under the Harmonized Tariff Schedule of the United States ("HTSUS") and collecting duties on such merchandise.

## JURISDICTION AND STANDING

3. Plaintiff brings this action pursuant to 19 U.S.C. § 1515 to contest U.S. Customs and Border Protection's denial of protest numbers 3802-23-105395, 2095-23-116373, and 4198-23-102496 concerning the classification of Geotab's importation of the GO Device, specifically the GO9, the GO9B, and the GO9+ (collectively, "the GO Device" or "subject merchandise").

4. This Court possesses exclusive jurisdiction of this action under 28 U.S.C. § 1581(a), as amended.

5. In accordance with 28 U.S.C. § 2636(a), this action was timely commenced withing 180 days of the denial of its protests.

6. Geotab has standing to bring this action pursuant to 28 U.S.C. § 2631(a) because its summons was filed under 19 U.S.C. § 1514 to contest the denial of Geotab's protests of the liquidations of the entries identified in the summons, which is the subject of this action.

7. All liquidated duties, taxes, and fees were paid prior to commencement of this action.

## PROCEDURAL BACKGROUND

8. The entries which are the subject of this action were filed at various ports of entry between February 1, 2022 and August 4, 2022 and were liquidated between August 12, 2022 and October 7, 2022.

9. The merchandise subject to these entries includes three models of Geotab's GO Device, a vehicle tracking and telematics device. The three models are the GO9, the GO9B, and the GO9+.

10. The subject merchandise was entered and is properly classified in heading 8517, HTSUS, as "other apparatus for the transmission or reception of voice, images or other data." Specifically, the subject merchandise was entered and is properly classified in subheadings 8517.62.0090 / 9903.88.15, HTSUS.  Such articles are generally duty free, unless they are manufactured in China, which the subject merchandise was.  Since February 14, 2020, articles classified in subheading 8517.62.0090 and manufactured in China are subject to an additional 7.5% *ad valorem* rate of duty, pursuant to duties that the United States imposed on products of China under Section 301 of the Trade Act of 1974.

11. Upon liquidation of the entries, the subject merchandise was classified by CBP as "radio navigational aid apparatus" under heading 8526, HTSUS, subheadings 8526.91.0040 / 9903.88.01, HTSUS.  Articles classified in subheading 8526.91.0040 are generally duty free, unless they are manufactured in China.  Since July 6, 2018, articles classified in subheading 8526.91.0040 and manufactured in China are subject to an additional 25% *ad valorem* rate of duty, pursuant to Section 301 duties.

12. The subject merchandise is not properly classified under subheadings 8526.91.0040 / 9903.88.01, HTSUS, because the product itself cannot be used as a radio navigational aid apparatus.

13. Geotab protested CBP's change in classification of the GO Device on February 7, 2023 and February 8, 2023.

14. CBP denied protest number 3802-23-105395 on March 10, 2023, protest number 2095-23-116373 on March 14, 2023, and protest number 4198-23-102496 on March 15, 2023.

15. The summons in this action was timely filed on September 1, 2023.

## **FACTS**

16.     Geotab is a global leader in connected transportation solutions. Geotab's products, including the GO Device, provide fleet optimization solutions that enable customers to transform their fleets and operations by tracking data on a vehicle's location, speed, engine idling, distance, and much more.

17.     The GO Device is an in-vehicle telecommunications hub that collects, transmits, and receives data. The GO Device is designed and marketed for near-real time fleet management. The subject merchandise allows fleet managers—individuals that oversee commercial vehicles and drivers—to maintain near-real time connectivity to their entire fleet of vehicles for the purpose of improving productivity, safety, efficiency, and ensuring the regulatory compliance of their fleets.

18.     The subject merchandise consists of three models of the GO Device: the GO9, GO9B, and the GO9+. The primary difference between the models is that the GO9+ can function as a Wi-Fi hotspot.

19.     The GO Device is designed to be installed in a vehicle's on-board diagnostics ("OBD") port, which is typically located in the driver's area at or below knee level under the vehicle's dashboard.

20.     Each model of the GO Device can collect hundreds of unique data points about a vehicle, its driver, and the vehicle/driver's surroundings. More specifically, the GO Device is capable of transmitting engine and accelerometer data, as well as data related to driver logs, vehicle inspection reports, fuel tax reports, seat belt usage, and vehicle impacts. The GO Device transmits this data to Geotab's servers, where Geotab's web-based software, MyGeotab, hosts, analyzes, and organizes the data, and makes it available to fleet managers over the internet.

21. The GO Device also receives data from fleet managers. Fleet managers can set up driving rules that cause the GO Device to automatically emit an audible sound when a rule is broken. For example, fleet managers can set up a rule where the GO Device will emit an audible sound if a driver is speeding, failing to wear a seatbelt, idling too long, or driving outside a predefined perimeter. The cellular modem on the GO Device transmits the driving data in near-real time over the cellular network and then receives the near-real time feedback that fleet managers provide to drivers to discourage unwanted driving behavior.

22. The GO Device does not have a screen and, therefore, cannot itself be used by a vehicle's driver to view vehicle location data or any other vehicle data. The GO Device also does not incorporate any buttons or controls. Instead, the data collected by the GO Device can be viewed only after it has been transmitted over the cellular network and made available to the fleet manager through the MyGeotab online web platform. The driver cannot see or control any data that has not already been transmitted and processed over the cellular network.

23. Fleet managers must purchase a data subscription plan to use the GO Device to access the data on the MyGeotab online web platform. Geotab currently offers a one-size-fits-all data subscription plan called the GO Plan. Formerly, Geotab offered four subscription tiers: (1) Base; (2) Regulatory; (3) Pro; and (4) ProPlus. Most of Geotab's customers remain on one of these four "legacy" subscription tiers, but all new customers must subscribe to the GO Plan. The legacy data subscription plan determines the specific types of data that will be communicated between the fleet manager and the GO Devices installed in the fleet. For example, the Base and Regulatory subscriptions do not allow access to certain engine and vehicle data collected by the device's controller area network bus component, nor do they allow access to accelerometer data.

The GO Plan offers the functionality of the ProPlus legacy subscription tier plan, but customers receive discounted rates on their plan if they do not use certain types of data.

24. The GO Device incorporates hundreds of individual components. A cellular modem is required for the GO Device to perform virtually all of its functions. The cellular modem enables all of the GO Device's data transmission and reception and is always on. The cellular modem is the single most valuable individual component in the GO Device from a component cost standpoint.

25. In addition to the cellular modem, the GO Device includes a global navigation satellite system ("GNSS") module for collecting location data; a controller area network ("CAN") bus for collecting engine and other vehicle data; a microcontroller unit ("MCU") for processing data collected by other components; and certain sensory components, including an accelerometer and gyroscope for collecting data related to movement and gravitational force.

26. The cellular modem transmits the data collected by the other components to provide fleet managers with information regarding the vehicle, the driver, and the vehicle's surroundings. The data that the GO Device collects is processed by the cellular modem, converted into wireless signals, and then transmitted by the cellular modem over the cellular network to Geotab's servers for the fleet managers to access the data.

## CAUSES OF ACTION

### COUNT 1

**The Subject Merchandise is Properly Classified in Heading 8517 Because This Heading Describes the Principal Use, As Determined By Applying the *Carborundum* Factors**

27. Paragraphs 1 through 26 are incorporated as though fully set forth herein.

28. The GO Device is properly classified in heading 8517, HTSUS, as an "apparatus for the transmission or reception of voice, images or other data."

29. CBP erred in classifying the GO Device in heading 8526.91.0040 / 9903.88.01, HTSUS, as a "radio navigational aid apparatus," because that is not the GO Device's principal use.

30. Merchandise imported into the United States is classified under the HTSUS. Classification is governed by the principles set forth in the General Rules of Interpretation ("GRI") and, where applicable, by the Additional U.S. Rules of Interpretation ("AUSRI").

31. GRI 1 requires that classification be determined first according to the terms of the HTSUS headings and any relevant section or chapter notes.

32. AUSRI 1(a) states that "[a] tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use."

33. The GO Device incorporates multiple components that perform functions covered by different headings, including a cellular modem, described by heading 8517, HTSUS, which provides for, *inter alia*, apparatus for the transmission or reception of data. The GO Device also incorporates an MCU described by heading 8542, HTSUS; a GNSS module described by heading 8526, HTSUS; and an accelerometer and gyroscope described by heading 9031, HTSUS.

34. The headings at issue are as follows:

**8517**   Telephone sets, including telephones for cellular networks or for other wireless networks; other apparatus for the transmission or reception of voice, images or other data, including apparatus for communication in a wired or wireless network (such as a local or wide area network), other than transmission apparatus of heading 8443, 8525, 8527 or 8528; parts thereof

**8542**   Electronic integrated circuits; parts thereof

> **8526**      Radar apparatus, radio navigational aid apparatus and radio remote control apparatus
>
> **9031**      Measuring or checking instruments, appliances and machines, not specified or included elsewhere in this chapter; profile projectors; parts and accessories thereof

35.   The Explanatory Notes to heading 8517 state the following, in relevant part:

> This heading covers apparatus for the transmission or reception of speech or other sounds, images or other data between two points by variation of an electric current or optical wave flowing in a wired network or by electro-magnetic waves in a wireless network. The signal may be analogue or digital. The networks, which may be interconnected, include telephony, telegraphy, radio-telephony, radio-telegraphy, local and wide area networks.
>
> …
>
> **(II) OTHER APPARATUS FOR TRANSMISSION OR RECEPTION OF VOICE, IMAGES OR OTHER DATA, INCLUDING APPARATUS FOR COMMUNICATION IN A WIRED OR WIRELESS NETWORK (SUCH AS A LOCAL OR WIDE AREA NETWORK)**
> …
>
> **(F) Transmitting and receiving apparatus for radio-telephony and radio-telegraphy.**
>
> This group includes…
>
> >    (4) Transmitters, receivers or transmitters/receivers of telemetric signals.
>
> **(G) Other communication apparatus.**
>
> This group includes apparatus which allows for the connection to a wired or wireless communication network or the transmission or reception of speech or other sounds, images or other data within such a network. …
>
> This group includes…
>
> >    (2) Modems (combined modulators-demodulators).

36.   Given that the GO Device transmits and receives data between two points—the vehicle in which the device is installed and Geotab's servers—over the cellular network, there is no dispute that the GO Device is *prima facie* classifiable in heading 8517, HTSUS pursuant to GRI 1. This conclusion is supported by the Explanatory Notes to heading 8517, HTSUS, which

specifically state this heading covers "transmitters/receivers of telemetric signals" and "modems."

37. While the GO Device also incorporates components that perform functions covered by other headings, including a GNSS module and an accelerometer of headings 8526 and 9031, HTSUS, respectively, those headings are not applicable for the reasons stated herein.

**Applying the *Carborundum* Factors to Determine the GO Device's "Principal Use"**

38. Heading 8517, HTSUS, is a principal use provision. *See Logitech, Inc. v. United States*, 532 F. Supp. 3d 1358, 1367 (Ct. Int'l Trade 2021).

39. To determine principal use, courts apply the *Carborundum* factors. *See United States v. Carborundum Co.*, 63 C.C.P.A. 98, 102, 536 F.2d 373, 377 (1976), cert. denied, 429 U.S. 979 (1976); *Lennox Collections v. United States*, 20 Ct. Int'l Trade 194, 196 (1996); *Kraft, Inc. v. United States*, 16 Ct. Int'l Trade 483, 489 (1992). The *Carborundum* factors are: (I) the general physical characteristics of the merchandise; (II) the expectations of the ultimate purchaser; (III) the channels of trade; (IV) the environment of the sale; (V) use in the same manner as merchandise that defines the class; (VI) economic practicality of so using the import; and (VII) recognition in the trade of this use.

40. All of the *Carborundum* factors support classification of the GO Device as a data communications device in heading 8517, HTSUS.

*I.   The General Physical Characteristics of the Merchandise*

41. The general physical characteristics of the GO Device support classification as a data communications apparatus in heading 8517, HTSUS. All of the GO Device's features and functions depend upon cellular connectivity, which is imparted by the cellular modem and enabled by all data subscription plans. The cellular modem is the GO Device's largest and most valuable individual component.

42. Additionally, much of the data collected by the CAN bus, accelerometer, and gyroscope is not available to subscribers of Geotab's two least expensive legacy data plans.

43. Because the GO Device does not incorporate a display, nor does it have any buttons or controls, it cannot be used for navigation or to view location data, engine data, driver behavior data, or any other data. As such, it cannot be used as a "radio navigation aid apparatus" of heading 8526, HTSUS or as a "measuring or checking instrument" of heading 9031, HTSUS.

44. The GO Device is entirely dependent upon cellular connectivity to perform virtually all of its functions. Geotab intentionally designed the GO Device to limit the driver's ability to physically interact with the product because the product is designed for fleet managers and not drivers. By limiting the driver's ability to control the device or see the data collected, and by requiring cellular connectivity to view the data collected, fleet managers retain control over each GO Device while the GO Devices are in the field.

*II.    The Expectations of the Ultimate Purchaser*

45. The expectations of the ultimate purchasers of the GO Device support classification as a data communications apparatus in heading 8517, HTSUS. The purchasers of the GO Device are private and public sector organizations whose operations include managing a fleet of vehicles, and the ultimate users of the GO Device are the fleet managers for those organizations. Fleet managers expect to use the GO Device to collect vast amounts of data and to communicate with their fleets in near-real time to optimize fleet performance. This includes receiving data about the vehicle and driver, such as location and speed, in addition to transmitting data to the GO Device for implementing driving rules and in-vehicle coaching.

46. While the GO Device has other functions, bi-directional data communication in near-real time is the central expectation of ultimate purchasers.

### III.   *The Channels of Trade*

47.   The channels of trade of the GO Device support classification as a data communications apparatus in heading 8517, HTSUS.  Geotab sells the GO Device and data subscription plans to a network of authorized resellers, which then sell the GO Device and a required data subscription plans to fleet managers.

48.   Authorized resellers assist fleet managers with implementation of the GO Device and offer ongoing support, service, and training.  A key part of this implementation is customizing the data that the GO Device collects, transmits, and receives, which is further evidence that the GO Device is principally used for transmitting and receiving data.  If the GO Device could be sold without such implementation support, Geotab would have less of a need to use authorized resellers.

49.   Selling to commercial clients through authorized resellers, as well as to governmental entities, rather than to individuals, demonstrates that Geotab's GO Device is targeted to entities that operate on a large scale.  These users face challenges best solvable through large-scale, near-real time data communications, which is exactly the role filled by the GO Device.

### IV.   *The Environment of the Sale*

50.   The environment of the sale of the GO Device supports classification as a data communications apparatus in heading 8517, HTSUS.  Geotab sells the GO Device in brown boxes that are generally devoid of attractive colors and do not contain marketing statements.  The contents of the box include the GO Device and a zip tie for securing the GO Device to the vehicle's on-board diagnostics port.

51.   Geotab's marketing materials for the GO9 device focus primarily on its near-real time data transmission and reception functions, while the marketing materials for the GO9+

emphasize data communications more than any other function.  For example, the introduction on the top of the second page of the GO9+ marketing brochure states the following:

> **Geotab GO9+**
> Stay connected. Stay productive. Stay in sync.
> Discover how the leading telematics device featuring onboard Wi-Fi can help improve your business functions.

52. Likewise, Geotab's authorized resellers emphasize the GO Device's data transmission and reception functions.  For example, the webpage of one such authorized reseller, Badger Fleet Solutions, includes the following marketing claims:

> **Productivity**
> Improve driver behavior with our robust suite of driver tracking and coaching tools. Find
> the solution that's right for your business.
>
> **Optimization**
> Monitor and control your fleet's fuel consumption. Set rules and alerts to improve routing, manage speeding and idling time. Use reports and driver training tools to save.
>
> **Safety + Risk Management**
> Be proactive. Monitor fleet safety in real-time and deliver in-vehicle coaching with
> Geotab. Promote good driving habits and implement gamification applications.
>
> **Compliance**
> Strengthen DOT compliance, safety and more. Stay in the know and minimize violations
> with reports on driver status and real-time alerts.

V.     *Use in the Same Manner as Merchandise that Defines the Class*

53. Use of the GO Device in the same manner as merchandise that defines the class of data communications apparatuses supports classification in heading 8517, HTSUS.  The GO Device is used primarily as a data communications device because it relies on transmitting and receiving data over the cellular network to perform virtually all of its functions.  Like a modem or a switching and routing apparatus, transmitting and receiving data are core to the commercial

and functional identity of the GO Device. Indeed, the transmission and reception of data enables fleet managers to access all of the GO Device's functions. Because it does not have a display or any buttons or controls, the GO Device cannot itself be used for any purpose other than collecting, transmitting, and receiving data.

54. While the GO Device may be used to collect and transmit GNSS data, engine data, accelerometer data, and various other types of data, these functions require cellular connectivity. Further, the GO Device's data reception functions require cellular connectivity (activating the GO Device with a data subscription plan, over-the-air firmware updates, implementing driving rules, in-vehicle coaching, etc.).

55. Given that the transmission and reception of data is the GO Device's core function in that it enables fleet managers to access all of the product's other functions, and given that the GO Device itself cannot be used to perform any functions, the GO Device is used in the same manner as merchandise classified in heading 8517, HTSUS (e.g., modems, routers).

### VI.     *The Economic Practicality of So Using the Merchandise*

56. The economic practicality of using the GO Device as a data communications device supports classification in heading 8517, HTSUS. Fleet managers must purchase each individual GO Device, then pay a monthly subscription fee for the data transmitted from each device. The monthly subscription fee increases as fleet managers deploy additional devices. This creates a monthly fixed cost for companies and entities employing the GO Device. The more expensive legacy subscription tiers include more data communication options and GO Plan users that need the full suite of data functionality generally pay higher subscription fees. The totality of data communicated between the GO Device and fleet managers over the cellular network enables fleet managers to obtain a return on their investment in the GO Device by reducing fleet operating costs. Any individual functions of the GO Device, such as GNSS

13

location data, would be less likely to show a return on investment and therefore less likely to be economically practicable. Moreover, devices that exclusively perform GNSS tracking functions are significantly cheaper to purchase and operate than the GO Device.

### VII.     The Recognition in the Trade of This Use

57.     Recognition in the trade of the GO Device as a data communications apparatus supports classification in heading 8517, HTSUS. Geotab is recognized in the trade as an Internet of Things ("IoT") company, and the GO Device is recognized in the trade as an IoT product. Recognition in the trade as an IoT company/device is relevant because IoT is, at its essence, data communications. Indeed, when third-party sources describe Geotab, they emphasize *collective* data collection, transmission, and reception capabilities, rather than any individual type of data, as the driving force behind Geotab's ascent to becoming the global leader in IoT solutions for fleet management.[1]

**Application of Legal Note 3 to Section XVI, HTSUS Leads To Classification in Heading 8517, HTSUS, Because This Analysis Also Applies the *Carborundum* Factors**

58.     In its protest rulings, CBP applied Legal Note 3 to Section XVI, HTSUS, which states the following:

> Unless the context otherwise requires, composite machines consisting of two or more machines fitted together to form a whole and other machines designed for the purpose of performing two or more complementary or alternative functions **are to be classified as if consisting only of that component or as being that machine which performs the *principal function*.**

(emphasis added).

59.     The Application of Legal Note 3 to Section XVI, HTSUS is not required here. The Explanatory Notes to Note 3 to Section XVI, HTSUS state that Note 3 "**need not be**

---

[1] Such third-party sources, including The Silicon Review, TechCrunch, ABI Research, and Enterprise Truck Rental, are cited in the underlying protests.

14

**invoked** when the composite machine is covered as such by a particular heading" (emphasis original). In addition, the courts have repeatedly declined to apply this legal note to electrical devices that contain components that perform different functions. *See, e.g.*, *Sony Elecs., Inc. v. United States*, Slip. Op. 13-153, p. 15 (Ct. Int'l Trade Dec. 23, 2013); *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1380 (Fed. Cir. 2011); *ABB, Inc. v. United States*, 421 F.3d 1274, 1277 (Fed. Cir. 2005).

60.  Nevertheless, application of Legal Note 3 to Section XVI, HTSUS still results in the conclusion that the subject merchandise is properly classified in heading 8517, HTSUS because the device's "principal function" is also determined by applying the Carborundum factors. For the reasons described above, the principal function of the GO Device is to transmit and receive data. Therefore, even if Legal Note 3 to Section XVI, HTSUS, was applied, the GO Device would be classified as a data communications apparatus in heading 8517, HTSUS.

## COUNT 2

**Alternatively, the Subject Merchandise Are Machines Consisting of Individual Components Intended to Contribute Together to a Clearly Defined Data Communications Function Under Subheading 8517.62.0090, HTSUS, Pursuant to Section XVI Note 4**

61.  Paragraphs 1 through 6060 are incorporated as though fully set forth herein.

62.  In the event the Court determines that the subject merchandise is not classifiable under heading 8517 according to their principal use, the subject merchandise is classified under heading 8517 pursuant to Section XVI Note 4.

63.  As noted above, GRI 1 requires that classification be determined first according to the terms of the HTSUS headings and any relevant section or chapter notes.

64.  Heading 8517 falls under Section XVI of the HTSUS.

65.  Section Note 4 to Section XVI, HTSUS, states:

15

>Where a machine (including a combination of machines) consists of individual components (whether separate or interconnected by piping, by transmission devices, by electric cables or by other devices) intended to contribute together to a clearly defined function covered by one of the headings in Chapter 84 or Chapter 85, then the whole falls to be classified in the heading appropriate to that function.

66. The subject merchandise are machines consisting of individual components, including a GNSS module, CAN bus, and MCU for gathering and processing data, and a cellular modem for transmitting and receiving data, which are intended to contribute together to the clearly defined function of data communications.

67. The subject merchandise are machines classified under heading 8517, HTSUS, subheading 8517.62.0090, HTSUS, because these individual components together form machines with the clearly defined function of data communications, specifically an "other apparatus for the transmission or reception of voice, images or other data."

\*\*\*

68. In accordance with law and fact, the subject merchandise is properly classified under subheadings 8517.62.0090 / 9903.88.15, HTSUS.

69. The applicable rate of duty is free. Because the subject merchandise are products of China, they are subject to an additional 7.5% *ad valorem* rate of duty since February 14, 2020, pursuant to Section 301 duties.

## **REQUEST FOR JUDGMENT AND RELIEF**

70. WHEREFORE, Plaintiffs request the Court to enter judgment in favor of the Plaintiffs:

71. Holding that the subject merchandise is properly classified under subheadings 8517.62.0090 / 9903.88.15, HTSUS, as "other apparatus for the transmission or reception of voice, images or other data," according to the terms of heading 8517;

72. In the alternative, holding that the subject merchandise is properly classified under subheadings 8517.62.0090 / 9903.88.15, HTSUS, as "other apparatus for the transmission or reception of voice, images or other data," pursuant to GRI 1 and Section XVI Note 4;

73. Directing CBP to reliquidate the subject entries and issue refunds of the excess Customs duties and fees assessed and paid, with interest, as provided by law; and

74. Granting Plaintiff such other relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

/s/ Michael E. Murphy
Michael E. Murphy
Aaron M. Applebaum
Ellen Crisham Pellegrini
Gordon D. Todd

*Counsel for Geotab Inc. and Geotab USA, Inc.*

**Sidley Austin LLP**
1501 K St. N.W.,
Washington, D.C. 20005
Ted.murphy@sidley.com
Tel.: +1 202 736 8016
Fax: +1 202 736 8735

Dated: September 30, 2025